# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **CORETEK LICENSING LLC,** | Civil Action No.: 1:20-cv-01597-MN-CJB |
| Plaintiff, | |
| v. | **TRIAL BY JURY DEMANDED** |
| **FREECONFERENCECALL.COM, INC.,** | |
| Defendant. | |

## PLAINTIFF CORETEK LICENSING LLC'S RENEWED OPPOSITION TO DEFENDANT FREECONFERENCECALL.COM, INC.'S MOTION TO DISMISS THE COMPLAINT

Dated: June 28, 2021

Together with:

SAND, SEBOLT & WERNOW CO., LPA

Andrew S. Curfman (*Pro hac vice*)
Aegis Tower - Suite 1100
4940 Munson Street, N. W.
Canton, Ohio 44718
Phone: 330-244-1174
Fax: 330-244-1173
Andrew.Curfman@sswip.com

Respectfully submitted,

CHONG LAW FIRM PA

*/s/Jimmy Chong*
Jimmy Chong (#4839)
2961 Centerville Road, Suite 350
Wilmington, DE 19808
Telephone: (302) 999-9480
Facsimile: (877) 796-4627
Email: chong@chonglawfirm.com

ATTORNEYS FOR PLAINTIFF

## TABLE OF CONTENTS

**Page**

I. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS .............. 1

II. SUMMARY OF THE ARGUMENTS ......................................................... 1

III. STATEMENT OF THE FACTS ................................................................. 3

    A. Problems existed with prior art ........................................................ 4

    B. The claims of the Patents-in-Suit are directed to a new, non-abstract methods, systems, and/or computer products which solved problems in the prior art....... 6

IV. STATEMENT OF THE LAW (35 U.S.C. §101) ......................................... 7

V. ARGUMENT ......................................................................................... 11

    A. The Asserted Patent claims are patent eligible ................................. 12

        1. *Alice* Step One: The claims do not recite an abstract idea ................... 12

        2. *Alice* Step Two: The claims contain an inventive concept and do not instruct a computer to perform human-centric functions...................... 17

    B. The dependent claims add inventive concepts ................................. 20

    C. Ineligibility under Section 101 is not ripe for determination........................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018)..... 9, 11, 20

*Alice Corp. Pty. v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014) ....................................................... 8, 9

*Amdocs (Israel) Ltd. v. Openet Telecom,  Inc.*,  841  F.3d  1288  (Fed. Cir. 2016) .................... 18

*Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018) ............................... 11, 19

*Bascom Global Internet Serv. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016).......... 9, 20

*Berkheimer v. HP, Inc.*, 881 F.3d 1360 (Fed. Cir. 2018)........................................................... 9, 18

*Cellspin Soft, Inc. v. Fitbit*, Inc., 927 F.3d 1306 (Fed. Cir. 2019) ................................................. 10

*Cf. Trading Tech. Int'l, Inc. v IBG LLC*, 921 F.3d 1378 (Fed. Cir. 2019).................................... 9

*Commil USA, LLC v. Cisco Sys.*, 135 S.Ct. 1920 (2015).............................................................. 8

*DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245 (Fed. Cir. 2014)............................. 11, 18, 20

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016)............................... 9, 12, 18, 20

*Epic IP LLC v. Backblaze, Inc.*, 351 F.Supp. 3d 733 (D. Del. 2018) ........................................... 14

*Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018) .......................................... 19

*Mayo Collaborative Serv. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289 (2012).............................. 8

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016)................... 9, 19

*Microsoft Corp. v. i4i Ltd.*, 131 S.Ct. 2238 (2011)....................................................................... 8

*Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 874 F.3d 1329 (Fed. Cir. 2017)

........................................................................................................................................ 11

*Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017).................................. 8, 19

**Statutes**
35 U.S.C. §101...............................................................................................................passim

35 U.S.C. §112................................................................................................................15

ii

35 U.S.C. §282 .................................................................................................................9

**Rules**

12(b)(6), Fed.R.Civ.P. ............................................................................................6, 13, 16

## I.      STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Coretek, LLC ("Coretek" or "Plaintiff") filed a Complaint for patent infringement against FreeConferenceCall.Com, Inc.[1] ("Free Conferencing" or "Defendant") on November 24, 2020, asserting that Defendant's FreeConferenceCall communications software infringed on claims 1, 12, 23, and 24 of U.S. Pat. No. 8,861,512 ("the '512 Patent"). D.I. 1 ¶¶ 63-78, D.I.1-1; claims 1, 11, 22, 23, and 24 of U.S. Pat. No. 9,173,154 ("the '154 Patent"). D.I. 1 ¶¶ 79-98, D.I. 1-2; claim 1 of U.S. Pat. No. 9,369,575 ("the '575 Patent"). D.I. 1 ¶¶ 99-108, D.I. 1-3; and claims 1, 3, 4, 5, 7, 9, 12, 14, 22, 23, and 24 of U.S. Pat. No. 9,591,551 ("the '551 Patent"). D.I. 1 ¶¶109-134, D.I. 1-4. (collectively "the Asserted Patents" or simply "the Patents.").[2]

On December 22, 2020, Defendant moved to dismiss the original Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On June 2, 2021, Coretek filed its First Amended Complaint D.I. 27, and on June 16, 2021 Defendant renewed its Motion to Dismiss (D.I. 30) as addressed to the First Amended Complaint. Coretek hereby renews its response in opposition to Defendant's renewed Motion.

## II.     SUMMARY OF THE ARGUMENTS

Defendant's contention that the claims are invalid under 35 U.S.C. §101 ("§101") oversimplifies the claimed inventions and ignores the claim language. Defendant contends that the claims of the Routing Patents are directed to "the *idea* of call routing" (D.I. 30 at 1, emphasis original) and the Extraction Patent is directed to "the *idea* of storing and extracting data." (*Id.*)

---

[1] By appearing and filing their Motion to Dismiss without raising it as a substantive grounds for dismissal, Free Conferencing Corporation waives their right to challenge service and/or notice of the present suit.

[2] Solely for purposes of consistency and clarity between Defendant's Motion and this Response, the '512, '575, and '551 Patents will be collectively referred to as "the Routing Patents" while the '575 Patent will be individually referred to as "the Extraction Patent." This nomenclature is adopted for clarity and consistency and is in no way to be understood to characterize these patents beyond what is presented herein.

However, this oversimplification ignores the proper application of patent eligibility analysis. The claims of the Asserted Patents are patentable under the first step of the §101 analysis because they are directed to a non-abstract and unconventional methods, systems, servers, and/or computer products for enabling a wireless device to initiate a network connection without using a network operator's home location register (HLR), (the Routing Patents, D.I. 27 ¶¶ 13, 25, and 46), and a system for detecting or determining any VoIP (Voice over Internet Protocol) location of any VoIP enabled wireless device registered to the system. (The Extraction Patent, D.I. 27 ¶ 39).

Defendant's contention that the applicants failed to describe how to achieve their goal in a non-abstract way is incorrect. D.I. No. 10 at pgs. 1-2. Namely, the specific claim elements of the Routing Patents, <u>as combined</u>, improved upon the prior art by implementing a module into the wireless device in the form of downloadable software to establish and control communications between the device and the server to enable the wireless connection without the network operator's HLR. Similarly, the specific claim elements of the Extraction Patent, <u>as combined</u>, improved upon the prior art by utilizing on a module, again implemented as downloadable software, to bypass the mobile network VoIP "routing area" to authenticate and connect to the VoIP location system to provide a reliable return path and reduce power consumption of the mobile device. The Asserted Patents specifications thoroughly explain the problems of the prior art solved by the respective inventions and provide detailed descriptions of both the prior art and the claimed improvements. The claims are therefore not "used only as tools to limit the abstract idea of call routing" as Defendant asserts. (D.I. 30 at 2).

The claims are also patentable under step two of the §101 analysis, because the claims do not monopolize or "[premept] *all* methods or systems for routing calls" as Defendant contends.

D.I. 30 at 12. Instead, the Asserted Patents claim a certain and definite way of improving the efficiency, reliability, functionality, and performance of wireless devices and servers when making network connections or when used with VoIP communications systems.

At most, Defendant's arguments contradicting the unconventional solution raise genuine issues of material fact that are not appropriately decided at the stage of Rule 12(b)(6), Fed.R.Civ.P. The Court should therefore deny Defendant's Motion to Dismiss.

## III.   STATEMENT OF THE FACTS

The Routing Patents:

The '512 Patent was filed from a PCT Application (filed March 7, 2007), was afforded a §371(c) date of December 8, 2008, and issued October 14, 2014. The '154 Patent and the '551 Patent are continuations from the '512 Patent and share the same specification and drawings and are each titled "Method of Enabling a Wireless Device to Make a Network Connection without Using a Network Operator's Home Location Register." The Routing Patents are directed to methods, systems, servers, and/or computer products enabling a wireless device to initiate a network connection without using a network operator's home location register (HLR). D.I. 27 ¶¶ 13, 25, and 46). Although the claims of each of the Routing Patents differ, for purposes of this Response, Plaintiff does not contest that claim 1 of the '512 Patent is representative of the claims of the Routing Patents.

The Extraction Patent:

The '575 Patent was filed from a PCT application (filed April 4, 2012), was affording a 371(c) date of February 17, 2014, and issued on June 14, 2016. The '575 Patent is directed to a system for detecting or determining any VoIP (Voice over Internet Protocol) location of any VoIP enabled wireless device registered to the system. (D.I. 27 ¶ 39).

3

## A.      Problems existed with prior art

The Routing Patents identified computer- or internet-centric technological problems that had not been solved by prior art, namely that: "calls, initiated by wireless devices, can be restricted for some or most of their outgoing traffic; for example, voice and data calls, as well as internet web brows-ing, can be restricted to those calls tariffs made available by the wireless network(s) that is subscribed to. Those wireless networks could be traditional wireless network operators or so called virtual network operators. The restrictions can even limit which web servers the user is actually allowed to access; in most or all cases the restrictions will limit the users in their home country to only one wireless network, i.e. the home wireless network to which the user is subscribed to." D.I. 27-1, col. 1:33-43. "Mobile network operators have little economic incentive to provide end-users with the freedom to choose the cheapest network for each call set-up route for any outgoing traffic and instead have every economic incentive to make this very difficult. Each subscriber to a particular network has to be registered in the home location register (HLR) of that operator in order to receive service. The ownership and control that a network operator has over its HLR constitutes a major entry barrier to competitors seeking to offer lower cost services." D.I. 27-1, col. 1:54-67.

Thus, as identified in the Routing Patents, the technological problems that existed were that lower cost and open communication services were restricted based on the need to use HLR (or visiting location register (VLR)) in routing SMS messages, voice calls, data calls, and the like. The Routing Patents solved these issues by providing the claimed methods, systems, and servers to enable communications without the need to use the HLR of the network operator.

The '575 Patent likewise identified computer- or internet-centric technological problems that had not been solved by prior art, namely that: "identifying the VoIP location of a device user

(be it a fixed or wireless device) connected to the internet to which to send data to is commonly done by means of the device user, at the time it requires certain data, to then access a so called URI (uniform resource identifier) consisting of a URL (uniform resource locator) and a URN (uniform resource name) and receive a reply to its "return path" with the data it required. This commonly used way of receiving data on demand… is cumbersome and inflexible as it does not allow receipt of the latest, most up-to-date data or information as and when it becomes available as the user may simply not know that data he requires is available to him. More recently, systems known as "Push Notification System" have addressed this as a potential solution, however they do not resolve the reliability aspects in terms of ensuring the return path (i.e. the user's device VoIP location) is accurate at all times." D.I. 27-3, col. 1:28-43. "Even the most recent systems, such as those known as "Push Notification" systems, do not have access to mobile operator's mobile devices VoIP "Routing Area".… This remains a major technical issue still not resolved by the prior art systems. A key aspect inherent to the complexity of VoIP networks all interconnected to each other, is that firewalls further complicate and reduce the reliability of most solutions. Another aspect that is not resolved in both fixed and wireless devices, and is most critical in wireless devices, is the power consumption when having to access very often specific URLs to see if any more updated or required information is available to the fixed or wireless device users…

Attempts have been made by companies providing automatic Push Notifications to use databases for those devices subscribed to their system. This in itself does not provide a solution to the issues described before; in particular, they do not resolve the near real time "WiFi router" or mobile net-work "Routing Area" changes (return path-VoIP location) nor the minimizing of power consumption." D.I. 27-3, col. 2:6-28.

5

Thus, the technological problems that existed were that prior art systems suffered from a high battery consumption rate on mobile devices, and solutions therefor did not ensure a reliable return path for data, particularly when a mobile device was moving between locations.

**B.**     **The claims of the Patents-in-Suit are directed to a new, non-abstract methods, systems, and/or computer products which solved problems in the prior art**

In order to overcome the problems identified in prior art, the method of Claim 1 in the '512 Patent involves a solution that utilizes a specific module that may be implemented as downloadable software that establishes and controls communication between the mobile device and the server, and provides location updates to the server. The module further monitors the network name and country code associated with the device. D.I. 27-1, col. 3:9-15. To address these specific network-centric and internet-centric technical problems, Claim 1 in the '512 Patent comprises a non-abstract wireless device with a built-in proprietary applications module, which may be implemented as downloadable software, for communications with a server. The server may then determine the best routing over all networks without the use of the HLR or VLR. *Id.* col. 5, line 40 – col. 7, line 11; claim 1.

Claim 1 of the '512 Patent provides a robust solution to the previous network-centric or internet-centric problems technological problems inasmuch as the "wireless device can initiate a network connection without using a network operator's HLR. The wireless device sends data to a server that defines a call request; and the server decides on the appropriate routing over all available networks for that call request. But, unlike a conventional HLR, the server can receive communications from the device using any one of several different protocols, and is not limited to the MAP (mobile application part) protocol." *Id.* col 3:51-59. Claim 1 of the '512 Patent provides an unconventional arrangement of its device, because the prior art devices and systems

6

lacked the incentive and ability to communicate over a network without the use of the carrier's HLR. By providing the proprietary applications module with a wireless device, Claim 1 of the '512 Patent was able to unconventionally enable communications without the use of an HLR over several different protocols. *Id.*

In order to overcome the problems identified in prior art, the method of Claim 1 in the '575 Patent involves a solution that "does not rely on the mobile network VoIP "Routing Area" as it does not have access to it. Instead; however, it relies on the mobile device downloadable software module, which at any change of VoIP access method or name, authenticates and connects to the Dynamic VoIP location system to which the mobile device is subscribed to and described herein. The combination of this software module (downloadable to each mobile device) together with the dynamic return path (VoIP location) extraction at the server of each mobile device connected to the server to which it's subscribed to; jointly form the Dynamic VoIP location system." D.I. 27-3, col. 3:14-25.

Claim 1 of the '575 Patent provides a robust solution to the previous network-centric or internet-centric technological problems inasmuch as the "action by the software module, reduces the power consumption of the mobile phone to the lowest possible, whilst still ensuring VoIP connection by the mobile phone. The mobile network's "Routing Area" still ensures including border areas in coverage, due to the fact that small bandwidth (i.e. GPRS) is more reliable then high bandwidth (i.e. 3G). This ensures the highest possible reliability also for the Dynamic VoIP location system..." *Id.* col. 3:33-40

## IV.       STATEMENT OF THE LAW (35 U.S.C. §101)

A patent is presumptively valid and patent eligible under 35 U.S.C. §101. *Cellspin Soft, Inc.*, 927 F.3d at 1319. The burden of establishing invalidity of any patent claim rests on

Defendant. 35 U.S.C. §282; *Microsoft Corp. v. i4i Ltd.*, 131 S.Ct. 2238, 2245 (2011); *Commil USA, LLC v. Cisco Sys.*, 135 S.Ct. 1920, 1929 (2015). On "a motion to dismiss under Rule 12(b)(6), [ ] all factual inferences drawn from the specification [of the patent] must be weighed in favor of [ ] the non-moving party." *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1261-62 (Fed. Cir. 2017).

Section 101 defines patent-eligible subject matters as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. §101. All inventions in effect embody, use, or apply laws of nature, natural phenomena, or abstract ideas so an invention is not patent-ineligible merely because it involves one of these. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2354 (2014).

The analysis of whether an invention is directed to an abstract idea under §101 consists of two steps. *Mayo Collaborative Serv. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289, 1296-1297 (2012). The first step "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 134 S.Ct. at 2355. If the claims are not directed to a patent-ineligible concept, the analysis ends because the claims are patentable under §101.

However, even if the Court finds the claims are directed to a patent ineligible concept, the Court must turn to the second step and examine the claim elements to determine whether they "contain[ ] an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 2357 (*citing Mayo*, 132 S.Ct. at 1294, 1298). Even if an invention recites an abstract idea, the invention is patentable if it has "additional features to ensure that the claim is more than drafted to monopolize the abstract idea." *Id.* (*citing Mayo*, 132 S.Ct. at 1297). The limitations must be considered both individually and as an ordered combination. *Id.* at 2355.

Claims are patent eligible if "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC*, 773 F.3d at 1257. Even if the claims use only generic computers, claims are patent-eligible if the claims do not preempt the abstract idea on generic computers performing conventional activities. *Bascom Global Internet Serv.*, 827 F.3d at 1350-51; *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016). *Cf. Trading Tech. Int'l, Inc. v IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019). So long as the novelty is not simply using a computer, "processes that automate tasks that humans are capable of performing are patent eligible if properly claimed." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016).

Although determination of patent eligibility under §101 is a question of law, there can be subsidiary fact questions that must be resolved in route to the ultimate legal determination. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). Whether claim elements or claimed combination are well-understood, routine, or conventional is a question of fact and prevents ruling at the motion to dismiss phase. *Id; see also Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Claims need not articulate the advantages of the claimed combinations to be eligible. *Uniloc USA, Inc.*, 957 F.3d at 1309. The specific elements of Claim 1 of the '512 Patent were an unconventional arrangement of elements, because the prior art methodologies required the use of the network owner's HLR for initiation of a network connection. As a combination, the mobile device and proprietary applications module of Claim 1 of the '512 Patent was able to unconventionally provide a device that initiated a network connection and controlled communications between a mobile device and a server without using the network owner's HLR.

9

By adding these specific elements of Claim 1 of the '512 Patent, an improved method was able to unconventionally provide less restrictive and lower cost communications. *See Cellspin Soft, Inc. v. FitBit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019).

Similarly, the specific elements of Claim 1 of the '575 Patent were an unconventional arrangement of elements, because the prior art systems were impractical for daily use as they drain the battery of a mobile device; while solutions thereto had unreliable return paths, particularly when a mobile device is moving. D.I. col.2, line 57 – col. 3, line 9. As a combination, the system of Claim 1 of the '575 Patent was able to unconventionally provide a device with more reliable return paths while simultaneous reducing battery consumption. By adding the specific elements of Claim 1 of the '575 Patent, an improved system was able unconventionally to provide more reliable VoIP location data with reduced battery consumption. *See Cellspin*, 927 F.3d 1306 (Fed. Cir. 2019).

Further, regarding the specific non-conventional and non-generic arrangements of known, conventional pieces to overcome an existing problem, the method of Claim 1 in the '512 Patent provides a device that would not preempt all ways of initiating a network connection, even connections without using the network owner's HLR, because the claimed method utilizes a proprietary applications module to initiate the connection and to control communications with the server. This limitation could be removed or performed differently (such as using the network's HLR, as taught in the prior art) or by utilizing a different means to enable connections without the aforementioned module. *See Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).

Similarly, the system of Claim 1 in the '575 Patent provides a device that would not preempt all ways of determining the VoIP location of a device registered to the system because the claimed system utilizes a module that authenticates and connects with a server at certain time intervals wherein the time between each interval is less than a time allowed by the registered device to receive a response from the server. This limitation could be removed or performed differently (such as using "always on" VoIP services, or through push notification systems, both as taught in the prior art) or by utilizing different time intervals that are equal to, or greater than, the time allowed to receive the response from the server.

Claim 1 of the '512 Patent and Claim 1 of the '575 are also patentable under step two of the §101 analysis, because the claims are not directed to a result or effect of an abstract idea that merely invokes generic processes and machinery. *See Ancora Techs., Inc.*, 908 F.3d at 1348; *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). At most, Defendant's arguments raise genuine issues of material fact that are not appropriately decided at the stage of Rule 12(b)(6), Fed.R.Civ.P. *See Aatrix Software* 882 F.3d at 1128.

## V.     ARGUMENT

Defendant makes two main arguments in support of its Motion to Dismiss: (A) the claims of the Asserted Patents are patent ineligible, since according to Defendant they (1) are "directed to abstract ideas"; (2) add nothing inventive or any specific improvement; and (3) the dependent claims likewise add nothing inventive; and (B) ineligibility under § 101 is ripe for determination. Defendant's arguments are without merit, and when all factual inferences are weighed in Coretek's favor, Defendant has not overcome the presumption that the claims of Asserted Patents are eligible under §101. Therefore, Defendant's Motion must be dismissed.

11

## A.     The Asserted Patent claims are patent eligible

### 1.     *Alice* Step One: The claims do not recite an abstract idea

The claims of the Routing Patents are patent eligible under the first step of the §101 analysis because, contra Defendant, they do not recite "the abstract idea of routing calls." D.I. 30 at pg. 6. Defendant describes the alleged abstract idea in a way that is untethered to the claim language and approaches the Routing Patents' claims at too high a level of generality, which the Federal Circuit explicitly warns against. *See Enfish*, 822 F.3d at 1337 ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to [section] 101 swallow the rule."). For example, as discussed below, Defendant all but ignores the nature of the claimed module, instead cursorily dismissing it as generic computer component.

Representative Claim 1 of the '512 Patent does not recite an abstract idea. Rather, it is directed to a device comprising a wireless device with a built-in proprietary application module. Defendant ignores or trivializes the prior art problems solved by the '512 Patent. *See Enfish*, 822 F.3d at 1337 (citing *Alice*, 134 S.Ct. at 2354); *see also McRO*, 837 F.3d at 1313.

In addition, the claims should be read as a whole, in light of the specification. The Federal Circuit has directed courts to "look to whether the claims focus on a specific means or method, or are instead *directed to a result or effect* that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd.* 874 F.3d at 1337 (emphasis added). The elements of Claim 1 remove the claims from the realm of abstract ideas. The '512 patent's explanation of how the claimed invention is an improvement on prior systems and focus on the specific elements providing benefits over prior art satisfies the first prong of *Alice*. *See Enfish*, 822 F.3d at 1335 (finding the "focus of the claimed advances over the prior art"

12

can inform the "directed to" inquiry in *Alice* step 1). Namely, the prior art indicated the problem of calls being restricted based on a network owner's HLR. D.I. 27-1, col. 2:26-67.

To combat the specific computer centric problem in the prior art, the '512 Patent claimed the technical solution of Claim 1, namely, a wireless device with a module implemented as downloadable software for initiating and controlling communications between the wireless device and a server, without using the network's HLR. Particularly, the specification of the '512 patent identifies that the module "is capable of communicating user and/or media information to an application server (AS) with a built-in proprietary applications server calls manager (PASCM). The PAM is also capable of communicating user 55 and/or media information to a media server (MS). The communication requires a wireless device (WD) or wireless hand-held device (HS), with a built-in PAM, a wireless connection (IF-B) and a wireless network (WN)."  D.I. 27-1, col. 3:51-59. The specification further indicates that the "proprietary applications server calls manager (PASCM) is capable of communicating with any WD or HS that has a built-in proprietary application module (PAM). The PASCM enables the communication and exchange of user information with [various other devices]." D.I. 27-1, col. 4:4-9. "The PAM establishes data communication between the WD or the HS and a wireless network coupled to a digital communication system with the PASCM." *Id.*, col. 4:23-26.

When at least this portion of the specification is considered in view of Claim 1, it can be seen that Claim 1 is focused on a specific device and operation because the wireless device utilizes a specific module that oversees and controls the communications with the server such that the server (PASCM) can only communicate with a wireless device having the proprietary applications module built in. These specific elements show that Claim 1 is focused on a

specific device with a specific operation, and not directed to a result or effect that is an abstract idea. *Two-Way Media Ltd.* 874 F.3d at 1337.

Defendant's cite to *Pragmatus Telecom, LLC v. Genesys Telecommunications Laboratories, Inc., 114 F.Supp.3d 192 (D. Del., 2015) and Voip-Pal.Com, Inc. v. Apple Inc., 375 F. Supp. 3d 1110 (N.D. Cal. 2019)* as instructive, claiming that the fact patterns in those cases are similar. For example, Defendant argues that the claims in *Pragmatus* were "directed to the same type of abstract idea as the '512 Patent: establishing a network connection with a user device based on information collected from the user device." D.I. 30 at pg. 9. Defendant further argues that, "[l]ike the Pragmatus and Voip-Pal.com claims, the claims of the '512 Patent fail to disclose the details of how to implement their call routing method, and instead describe the system only at a high level of generality." *Id*. at pg. 10.

To the contrary, Claim 1 identifies that the manner in which the wireless device, module, and server are implemented, which is by "the wireless device using the module to send, over the wireless link, data to the server that defines a call request; in response to the call request, a software application running on the server deciding on the appropriate routing to a third party end-user over all available networks for that call request without using the network operator's home or visitor location register." D.I. 27-1 at Claim 1. Thus, Claim 1 clearly identifies the manner in which the wireless device, module, and server are implemented.

The claims of the '575 Patent are eligible under the first step of the §101 analysis because, contra Defendant, they do not recite "the abstract idea of storing and extracting data." D.I. 30 at pg. 15. Defendant again describes the alleged abstract idea in a way that is untethered to the claim language and approaches the Patent-in-Suit's claims at too high a level of generality. *See Enfish*, 822 F.3d at 1337.

Claim 1 does not recite an abstract idea. Rather, it is directed to a system for determining any VoIP location of a wireless device registered to the system comprising a multiple VoIP enabled wireless device with a built-in downloadable software module to enable the dynamic extraction and reporting of the VoIP address or return path of the wireless device. D.I. 27-3, claim 1. Defendant ignores or trivializes the prior art problems solved by the '343 Patent. *See Enfish*, 822 F.3d at 1337 (citing *Alice*, 134 S.Ct. at 2354).; *see also McRO*, 837 F.3d at 1313.

In addition, the claims should be read as a whole, in light of the specification. *See Two-Way Media Ltd.* 874 F.3d at 1337. The elements of Claim 1 remove the claims from the realm of abstract ideas. The '575 patent's explanation of how the claimed invention is an improvement on prior systems and focus on the specific elements providing benefits over prior art satisfies the first prong of *Alice*. *See Enfish*, 822 F.3d at 1335. Namely, the prior art indicated the problem of dynamic VoIP location services utilizing an always on configuration that rapidly depleted the batteries of a mobile device and/or push notification systems that provided unreliable return paths, particularly when the mobile device was moving between VoIP routing areas. D.I. 27-3. col. 2:52 – col. 3:9.

To combat the specific computer centric problem in the prior art, the '575 Patent claimed the technical solution of Claim 1, namely, the system and its particular and ordered sequential operation. Particularly, the specification of the '575 patent identifies that the claimed system resolves the issues of the prior art without "rely[ing] on the mobile network VoIP "Routing Area" as it does not have access to it. Instead however, it relies on the mobile device downloadable software module, which at any change of VoIP access method or name, authenticates and connects to the Dynamic VoIP location system to which the mobile device is

15

subscribed to and described herein. The combination of this software module (downloadable to each mobile device) together with the dynamic return path (VoIP location) extraction at the server of each mobile device connected to the server to which it's subscribed to jointly form the Dynamic VoIP location system. As the mobile software module additionally checks if any other application is running on the mobile device other than itself, including in standby mode, it will close all other applications (such as for example the application of the previous mentioned SIP service provider) AND will switch the VoIP access method of the mobile phone to the smallest bandwidth available to such mobile phone, for example switching from 3G/UMTS/WCDMA to GPRS. D.I. 27-3, col. 3:10-33. The specification further indicates that "action by the software module reduces the power consumption of the mobile phone to the lowest possible, whilst still ensuring VoIP connection by the mobile phone. The mobile network's "Routing Area" still ensures including border areas in coverage, due to the fact that small bandwidth (i.e. GPRS) is more reliable then high bandwidth (i.e. 3G). This ensures the highest possible reliability also for the Dynamic VoIP location system..." *Id.*, col. 3:34-40. "The software module… …will then connect and authenticate to the server of the Dynamic VoIP location system at certain time intervals, but in particular at each change of wireless connection method or name." *Id.*, col. 3:41-46.

When at least this portion of the specification is considered in view of Claim 1, it can be see that Claim 1 is focused on a specific system and operation because the VoIP enabled mobile device utilizes a specific module that authenticates and connects to the server at specific time intervals. These specific elements show that Claim 1 is focused on a specific device with a specific operation, and not directed to a result or effect that is an abstract idea. *See Two-Way Media Ltd.* 874 F.3d at 1337.

16

Defendant's cite to *Twilio, Inc. v. Telesign Corporation, 249 F.Supp.3d 1123 (N.D. Cal., 2017)* for the position that Claim 1 relates to a fundamental human activity, but not the way to achieve the claimed result. D.I. 30 at pg. 17. Defendant further argues that the language of Claim 1 is "result-based functional language that confirms the abstractness" thereof. *Id.* at pg. 18. Defendant also argues that the '575 Patent "risks preempting all methods of detecting, extracting, and storing VoIP data. *Id.*

As discussed herein, Claim 1 clearly identifies that the manner in which the claimed system is implemented, namely, by "a VoIP enabled wireless device registered to the server and a software module downloadable from the server to the VoIP enabled wireless device… …which at certain time intervals authenticates and connects to the server which is part of the system, and (f) wherein a time between each time interval of the registered VoIP enabled wireless device authenticating and connecting with the server is less than a time allowed by the registered VoIP enabled wireless device to receive a response from the server." D.I. 27-3, Claim 1.

Taken together, the claimed system is implemented when a wireless device that is registered to a VoIP server, having a built in module, dynamically extracts and reports VoIP data, including VoIP address or return path data, to the server at specific time intervals wherein the time between these certain intervals is less than a time allowed by the wireless device to receive a response from the server. *Id.* Thus, Claim 1 clearly identifies the manner in which the claimed system is implemented.

### 2.   *Alice* **Step Two: The claims contain an inventive concept and do not instruct a computer to perform human-centric functions**

Even if the Court finds that Defendant has satisfied the first prong of *Alice*, the Asserted Patent claims are patent eligible under the second step of the §101 analysis. This is so

because the claim elements provide an inventive concept that "entail[s] an unconventional technological solution … to a technological problem." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300 (Fed. Cir. 2016).

Defendant over-simplifies the claimed process and ignores the claim language. *See Enfish*, 822 F.3d at 1337. Whether a claim element or combination of elements is well understood, routine, or conventional is a question of fact, which Defendant has the burden of proving by clear and convincing evidence. *Berkheimer*, 881 F.3d at 1368. Further, the '343 Patent's claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks. *DDR Holdings,* 773 F.3d at 1257.

The claims of the Asserted Patents contain limitations "directed to the arguably unconventional inventive concept described in the specification"; therefore, the specification supports improved functionality. *Berkheimer*, 881 F.3d at 1370. The limitations, individually and as an ordered combination, significantly narrow the claim scope from the alleged abstract idea and are patent-eligible. *Bascom*, 827 F.3d at 1350, 1352; *McRO*, 837 F.3d at 1315.

Throughout its Motion, Defendant attacks the claims and specification of the Asserted Patents and the Complaint by inappropriately alleging that the invention is only claimed and described in general terms. The Federal Circuit has rejected this irrelevant attack by holding that "whether a patent specification teaches an ordinarily skilled artisan how to implement the claimed invention presents an enablement issue under 35 U.S.C. §112, not an eligibility issue under § 101." *Visual Memory*, 867 F.3d at 1261. When reviewing a Rule 12(b)(6) motion, it is improper to assume that the disclosures in the specification do not teach an ordinary skilled artisan how to implement the invention. *Id.* The "implementation details [of the invention] may

well fall within the routine knowledge of one of ordinary skill in the art, and a patent need not teach, and preferably omits, what is well known in the art." *Id.* (internal quotes removed); *see also Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018). The Federal Circuit has further specifically rejected arguments that claims "do not sufficiently describe how to implement the idea." *Id.*; *Uniloc*, 772 Fed. Appx. at 899. The technical detail in the asserted claims is on par with the level of detail in claims held by the Federal Circuit to be patent eligible. *E.g.*, *Finjan*, 879 F.3d at 1303; *Visual Memory*, 867 F.3d at 1257; *McRO*, 837 F.3d at 1307-8; *Ancora Techs.*, 908 F.3d at 1345-46.

As discussed herein, the Routing Patents addressed computer- or internet-centric technological problems that had not been solved by prior art, namely, that calls, initiated by wireless devices, can be restricted for some or most of their outgoing traffic by network operators. Each subscriber to a particular network has to be registered in the HLR of that operator's network in order to receive service. The ownership and control that a network operator has over its HLR constitutes a major entry barrier to competitors seeking to offer lower cost services. The '575 Patent likewise addressed computer- or internet-centric technological problems that had not been solved by prior art, namely that: "identifying the VoIP location of a device user… …is cumbersome and inflexible as it does not allow receipt of the latest, most up-to-date data or information as and when it becomes available. More recently, push notification based solutions address battery drain of "always on" type VoIP systems, but do not resolve the reliability issues relating to mobile devices moving between VoIP routing areas. The claims of the Asserted Patents addressed these computer- or internet-centric issues, as discussed herein. Accordingly, under part two of the §101 analysis, the claims of the Asserted Patents represent technological improvements over the prior art, which is sufficient in and of itself for eligibility.

*See DDR Holdings, LLC*, 773 F.3d at 1257; *see also Bascom Global Internet Serv.*, 827 F.3d at 1350-51; *Enfish,* 822 F.3d at 1338; *Cf. Trading Tech.* 921 F.3d at 1385.

### B.    The dependent claims add inventive concepts

Defendant's attack on the dependent claims of the Asserted Patents fails to recognize that the added limitations further demonstrate the claims' novelty. The dependent claims are patent-eligible because they further narrow the improved methods, systems, servers, and/or computer products for enabling a wireless device to initiate a network connection without using a network operator's HLR (the Routing Patents) and the system for detecting or determining any VoIP location of any VoIP enabled wireless device registered to the system (the Extraction Patent).

### C.    Ineligibility under Section 101 is not ripe for determination

Defendant's ripeness argument merely restates its argument that the claims of the Asserted Patents are nothing more than the application of admittedly well-known technology. As stated above, Defendant characterizes the claims in a way that is untethered to the claim language and approaches the Patent-in-Suit's claims at too high a level of generality. *See Enfish,* 822 F.3d at 1337. The claims must be read as a whole, in light of the specification.

Contrary to Defendant's assertion, the claims are not ripe for determination under Section 101. At most, Defendant's arguments raise genuine issues of material fact that are not appropriately decided at the stage of Rule 12(b)(6), Fed.R.Civ.P. *See Aatrix Software* 882 F.3d at 1128.

### CONCLUSION

For the foregoing reasons, Plaintiff Coretek IP LLC respectfully requests that this Court deny Defendant's Motion to Dismiss.

Dated: June 28, 2021                    Respectfully submitted,

Together with:                          CHONG LAW FIRM PA

SAND, SEBOLT & WERNOW CO., LPA          */s/Jimmy Chong*

Andrew S. Curfman (*Pro hac vice*)      Jimmy Chong (#4839)
Aegis Tower - Suite 1100                2961 Centerville Road, Suite 350
4940 Munson Street, N. W.               Wilmington, DE 19808
Canton, Ohio 44718                      Telephone: (302) 999-9480
Phone: 330-244-1174                     Facsimile: (877) 796-4627
Fax: 330-244-1173                       Email: chong@chonglawfirm.com
Andrew.Curfman@sswip.com
                                        ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 28, 2021, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.


                              */s/Jimmy Chong*
                              Jimmy Chong